(699 P.2d 579)

No. 56,593

WESTERN FOOD PRODUCTS COMPANY, INC., *Appellant*, v. UNITED STATES FIRE INSURANCE COMPANY, *Appellee*.

Opinion filed May 2, 1985.

*Dennis O. Smith,* of Dennis O. Smith, Chartered, and *Michael R. O'Neal,* of Reynolds, Peirce, Forker, Suter & O'Neal, of Hutchinson, for appellant.

*Gerald L. Green,* of Gilliland, Hayes, Dillon & Green, P.A., of Hutchinson, for appellee.

Before ABBOTT, P.J., PARKS and MEYER, JJ.

PARKS, J.: Plaintiff, Western Food Products Co., Inc., was the owner of an airplane insured by defendant, United States Fire Insurance Company. The plane was totally destroyed in a crash on January 5, 1981, and plaintiff filed a claim for its loss with the insurer. Defendant denied coverage for the loss and plaintiff filed this action. Both parties requested summary judgment based on stipulated facts and the trial court granted judgment to defendant insurer. Plaintiff appeals.

The parties stipulated that at the time of the crash, the airplane was being operated by Charles Newton Benscheidt, who had been issued a private pilot's certificate on January 14, 1976, with ratings for single engine land aircraft. Mr. Benscheidt was issued

a third-class medical certificate with no limitations on October 3, 1977, which expired on October 31, 1979. The records of the Federal Aviation Administration fail to indicate that any subsequent medical certificate was issued to Mr. Benscheidt.

The district court held that because defendant's insurance policy requires the pilot to have valid medical certification as a condition of coverage, defendant was not liable for the loss of the aircraft. Plaintiff contends that this holding is erroneous because the policy provision requiring a medical certificate did not apply to the person piloting the plane when it crashed. Arguing that this clause is ambiguous, plaintiff contends that it must be construed in its favor and held inapplicable under the circumstances. The clause at issue states as follows:

"THE PILOT FLYING THE AIRCRAFT: The aircraft must be operated in flight only by a person shown below who must have a current and proper (1) medical certificate and (2) pilot's certificate with necessary ratings, as required by the FAA for each flight. There is no coverage under the policy if the pilot does not meet these requirements."

Immediately after the above clause was typed the following language:

"STEVE BENSCHEIDT, JAMES DRISCOLL, III; OTHERWISE, PILOTS WHO HAVE A CURRENT PRIVATE OR COMMERCIAL CERTIFICATE AND A MINIMUM OF 750 LOGGED PILOT HOURS OF WHICH AT LEAST 25 HOURS HAVE BEEN IN THE SAME MAKE AND MODEL AIRCRAFT WE COVER IN ITEM 5."

It is undisputed that at the time the insured airplane crashed, it was being piloted by an individual who is not named in the above paragraph. In addition, plaintiff concedes that the pilot of the plane did not have a current medical certificate. Thus, plaintiff seeks to avoid the exclusionary force of the insurance provision by initially contending that it is ambiguous.

If this insurance provision can be said to be ambiguous, the insured is entitled to the benefit of various rules of construction. *American Media, Inc. v. Home Indemnity Co.*, 232 Kan. 737, Syl. ¶¶ 1-6, 658 P.2d 1015 (1983). However, if the language of the policy is clear and unambiguous, the words are to be taken and understood in their plain, ordinary and popular sense, and there is no need for judicial interpretation or the application of rules of liberal construction; the court's function is to enforce the con-

tract according to its terms. *American Media, Inc.*, 232 Kan. at 740.

The provision of defendant's policy appears clear. The printed language indicates that the plane must be piloted by one of the persons enumerated in the space provided on the form and that this pilot must have both a valid medical certificate and a pilot's certificate. The contract specifically states that there is no coverage if the pilot does not meet these requirements. The typed-in list of approved pilots includes two individuals and any others who meet specific standards of experience. Thus, three categories of approved pilots are named—the category consisting of Steve Benscheidt, that naming James Driscoll and a third category including pilots who have a certain amount of experience.

Plaintiff contends that there is ambiguity in whether the requirements for a current medical and pilot's certificate apply to pilots falling in the third category. It argues that since these "other pilots" must meet flying-time standards more stringent than those met by either Steve Benscheidt or James Driscoll, this experience criteria supersedes the restrictions contained in the printed portion of the clause.

This argument defies the plain structure of the insurance provision. The policy provides the insured with the prerogative to choose its pilots within certain limits. Two specific individuals are listed as approved (so long as they have current medical and pilot's certificates) but other pilots will be covered only if they have the requisite experience and certification. The structure of the paragraphs indicates that the entire typed paragraph is incorporated by reference into the printed portion of the provision. The "person shown below" could include any person falling within the three described categories. In sum, the insurer has defined the scope of its coverage in clear terms. Any pilot flying the plane at the time of an accident must have both the medical and pilot's certificate in order for the loss to be protected. We find no ambiguity in this requirement.

Plaintiff contends that even if the provision of the policy excluding coverage of a flight piloted by a person without a medical certificate is unambiguous, it should not be enforced absent proof of a causal connection between the crash and the health of the pilot. Although such a holding would certainly depart from the ordinary rule mandating enforcement of an unambiguous provision according to its terms, the argument is

not without some support in other jurisdictions. See, *e.g., Bayers v. Omni Aviation Managers, Inc.,* 510 F. Supp. 1204, 1207 (D. Mont. 1981); *Avemco Insurance Company v. Chung,* 388 F. Supp. 142 (D. Hawaii 1975); and *S. C. Insurance Company v. Collins,* 269 S.C. 282, 237 S.E.2d 358 (1977). These opinions generally stress the social purpose of insurance and the unfairness to the insured if he loses his expected protection because of a technical breach of the policy which is unrelated to the risks insured. However, in each of these cases the court was able to say that the provision relied on by the insurer failed to include language of express exclusion. The opinions could fairly conclude that the provision relied upon to exclude coverage under the aviation policy was a forfeiture clause or condition subsequent which is not ordinarily deserving of enforcement. See, *e.g., Am. States Ins. Co. v. Byerly Aviation, Inc.,* 456 F. Supp. 967 (S.D. Ill. 1978). Thus, in these cases the court was generally concerned with a provision viewed as attempting to eliminate extended coverage rather than one which defines the intended scope of coverage in the first instance.

In this case, the provision states unequivocally, "there is no coverage under the policy if the pilot does not meet these requirements." It is not a question of the insured being forced to forego coverage for which he has already paid; no protection was ever extended to cover the circumstances of the loss. Thus, since the policy specifically excludes coverage, its application cannot be categorized as a forfeiture.

A second distinguishing point of the cases holding that a causal connection must be shown to exclude coverage in an aviation insurance policy is that in each of the cases relied upon by plaintiff, there is state law either strongly favoring coverage in the absence of causation or requiring liberal construction of exclusionary clauses even without a specific finding of ambiguity. For example, in *S. C. Insurance Company,* 269 S.C. at 288, the court relied on a line of cases involving automobile liability and life insurance. These precedents held in varying situations that the violation of a provision limiting coverage would effectively operate to exclude liability only if a causal connection were demonstrated between the risk sought to be excluded and the actual loss. See also *Avemco Insurance Company,* 388 F.

Supp. at 147. (applying Hawaiian law, the court noted that exclusionary clauses must be liberally construed).

By contrast, Kansas decisions have considered the purpose and reasonableness of an exclusionary provision in other types of insurance policies. to determine its scope, but they have not demanded a relationship between the failure to satisfy the limitation and the actual loss sustained. For example, in *Mah v. United States Fire Ins. Co.*, 218 Kan. 583, 588, 545 P.2d 366 (1976), the Court was concerned with whether a geographical limitation in an insurance policy covering a mobile home was unambiguous and enforceable. The insured argued that there was no relevant connection between the geographical limitation and the extended coverages and that, thus, the parties. did not intend this limitation to apply. The Court pointed· out that there was indeed good reason for the insurer to seek to geographically limit its extended coverage and held the provision doing so to be unambiguous. The Court then refused to further consider the relationship between the limitation imposed and the actual loss suffered, stating as follows:

"Further discussion of the relevance, materiality or importance of location of insured property is. not warranted here, for the issue here is not whether the geographic limitation *should be* applicable, but whether it is applicable under the policy terms. We hold that it is." *Mah,* 218 Kan. at 588.

Thus, the Court refused to discuss an argument similar to that made here—that there must be some relevant connection between the actual loss sustained and the limiting provision sought to be enforced. The connection between the limitation and the abstract risks insured may be examined to determine the scope of the limitation but there is no need for the loss to be caused by the condition named in the exclusion in order for the exclusion to be effective.

Similarly, in *Heshion Motors, Inc. v. Trinity Universal Ins. Co.*, 229 Kan. 412, 414, 625 P.2d 437 (1981), the Court discussed the purpose of a provision conditioning coverage for a theft by deception on the possession of legal title to the car stolen. However, the purpose of this discussion was confined to determining the intended meaning of the policy provision requiring full and valid title. The Court did not consider, once finding the provision unambiguous and applicable, whether there was a causal connection between the failure to have legal title and the theft of the car.. The limitation on coverage was to be enforced so

long as the insured failed to prove it had title to the car. See also *Adventure Line Mfg. Co. Inc. v. Western Casualty & Surety Co.,* 214 Kan. 820, 522 P.2d 359 (1974).

Plaintiff cites *Leiker v. State Farm Mutual Automobile Ins. Co.,* 193 Kan. 630, 396 P.2d 264 (1964), in support of its argument that causation must be proven by the insurer before coverage may be excluded. The issue in *Leiker* was whether the particular facts of an automobile accident fell within the terms of an exclusionary clause. The clause provided that the insurance would not apply to "bodily injury sustained in the course of his occupation by any person while engaged (1) in duties incident to the operation, loading or unloading of . . . a . . . commercial automobile." The Court was initially concerned with whether the decedent was engaged in duties incident to the operation of a commercial auto. To determine this question, the Court had to decide whether the provision required proof of a connection between the accident and the operation of the truck. The Court's concern with causation resulted from its need to determine the scope of the exclusionary clause. This was not a case where the court found the exclusion applied on its face but demanded proof of causation before liability could be avoided. Therefore, *Leiker* is not authority for the argument put forth by plaintiff. Indeed, our research discloses no Kansas insurance cases suggesting that a causal connection must be established before an insurer may take advantage of a provision which by its terms excludes coverage.

Finally, we note that despite the existence of cases in which plaintiff's causation argument has been adopted, the majority of jurisdictions have held to the contrary. See, *e.g., Ochs v. Avemco Ins. Co.,* 54 Or. App. 768, 636 P.2d 421 (1981); *Security Mut. Cas. Co. v. O'Brien,* 99 N.M. 638, 662 P.2d 639 (1983); *Hollywood Flying Service v. Compass Ins. Co.,* 597 F.2d 507 (5th Cir. 1979); *Glades Flying Club v. Americas Aviation & M. Ins. Co.,* 235 So.2d 18 (Fla. Dist. App. 1970). The rationale behind these decisions is summarized as follows:

"We hold that a causal connection between an exclusion clause and an accident is not necessarily essential before coverage can be denied. In *Glades Flying Club v. Americas Aviation & M. Ins. Co.,* 235 So.2d 18 (Fla. App. 1970), a Florida court, faced with a similar set of facts and an identical policy exclusion, held that no causal connection was needed. The court stated:

'An aircraft insurance policy may validly condition liability coverage on com-

pliance with a governmental regulation and, while non-compliance with such a regulation continues, the insurance is suspended as if it had never been in force. There need be no causal connection between the non-compliance and the loss or injury. (Citations omitted.)'

*Id.* at 20. To hold otherwise would allow courts to ignore the plain language of insurance policy exclusions whenever they feel an insurer should not be allowed to avoid liability for an accident unrelated to a policy exclusion. This rationale is contrary to substantial legal precedent as well as long-standing public policy. Insurance coverage must not be afforded aircraft owners who ignore or refuse to comply with established certification requirements commonly part of policy exclusions." *Security Mut. Cas. Co. v. O'Brien,* 99 N.M. at 640.

In conclusion, we remain unconvinced by plaintiff's argument that the ordinary rules of construction should be abandoned in this case. The exclusionary provision of the insurance contract is unambiguous and we refuse to alter this plain language to forestall its effect. Therefore, like the majority of jurisdictions, we must conclude that a causal connection between the accident causing the loss and the purpose of an exclusionary clause need not be proven before coverage can be denied by the aircraft insurer on the basis of the exclusion.

Plaintiff's final argument is that since the insurer should have known from the information submitted to it that the pilot did not have a current medical certificate, it is estopped from denying coverage. It is a general rule, acknowledged in this jurisdiction, that waiver and estoppel may be invoked to forestall the forfeiture of an insurance contract but they cannot be used to expand its coverage. *Ron Henry Ford, Lincoln, Mercury, Inc. v. Nat'l Union Fire Ins. Co.,* 8 Kan. App. 2d 766, 769, 667 P.2d 907 (1983). We have concluded that the defendant's policy unambiguously excludes coverage of the factual situation in this case There is no forfeiture of coverage being effected; the insured was never protected for the circumstances which took place. Therefore, the equitable relief of estoppel claimed by plaintiff is inappropriate because it would operate to expand the plain scope of the insurance policy.

Affirmed.

ABBOTT, J.: I concur in the result.